Filed 10/23/25  P. v. Sires CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>GLENN WILLIAM SIRES,<br><br>  Defendant and Appellant. | 2d Crim. No. B339024<br>(Super. Ct. No. 2016036366)<br>(Ventura County) |

Glenn William Sires appeals the trial court's judgment denying his petition for resentencing pursuant to Penal Code section 1172.6 concerning his 2018 second degree murder conviction.[1]  Following an evidentiary hearing, the trial court found beyond a reasonable doubt that there is substantial evidence to support a finding of second degree murder. Specifically, the court found that Sires is guilty pursuant to theories that he was the actual perpetrator of murder or, in the

---

[1] All statutory references are to the Penal Code unless stated otherwise.

alternative, that he aided and abetted implied malice murder. Sires now contends, among other things, that the evidence is insufficient to support those findings. We affirm. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 [substantial evidence review applies to section 1172.6 resentencing order].)

*FACTUAL AND PROCEDURAL HISTORY*

This appeal concerns the 2009 murder of Janice Richardson by fellow drug users Sires and Idee Scholz.[2] Following a jury trial, Sires was acquitted of first degree murder but convicted of second degree murder. He now seeks resentencing pursuant to section 1172.6, generally contending that he was wrongly convicted under theories of felony murder or imputed malice murder. Evidence admitted at the resentencing hearing included the trial evidence previously admitted and contained in the 2018 record of conviction. (*People v. Sires* (May 12, 2020, B294556 [nonpub. opn.] [conviction affirmed].)

Sires, Richardson, Idee, and Zachery Lopez were fellow drug users. Richardson used heroin and methamphetamine although she had underlying health problems. Several months before she died, Sires persuaded Richardson to allow Idee to move into Richardson's Simi Valley home as a caregiver.

Initially, Richardson and Idee appeared to get along well but soon friction developed. Richardson complained to Lopez that she wanted Idee to move from her home because she feared for her life. Richardson also stated to Lopez that she feared Sires. In response to Idee's complaints concerning Richardson, Lopez heard Sires state: "[A]ll you have to do is . . . . [j]ust give her a

---

[2] We refer to Idee Scholz and Ronald Scholz, introduced later in the opinion, by their first names to ease the reader's task.

2

shot. And all of this could be ours." Sires then added that he was "just joking."

Richardson continued to complain to Lopez that she did not want Idee living with her. On January 10 and 11, 2009, Simi Valley police officers visited Richardson and explained the legal process for evicting a roommate.

Two days prior to Richardson's death, Lopez mediated a move-out plan between Richardson and Idee. Richardson appeared frightened of Idee who called her names during Lopez's visit. Richardson also applied for a temporary restraining order against Idee, but Richardson died before her court appearance.

On January 23, 2019, Sires and Idee persuaded Idee's estranged husband, Ronald, to drive them to Richardson's home. They planned to retrieve mail at the home evidencing that they were committing identity theft against Richardson. Ronald parked his vehicle down the street from Richardson's home. Sires initially entered Richardson's home, then asked Idee to enter. Prior to entering the home, Sires injected a doughnut with a liquid intended to sedate Richardson.

Ronald later received a text message from Idee stating that Richardson was angry. Idee sought refuge in a bathroom and Richardson was striking the bathroom door with a baseball bat. Idee later texted Ronald and stated that "it's done." Sires and Idee walked to Ronald's vehicle; Sires was carrying a plastic bag that was eventually abandoned in a hotel dumpster. At Sires's request, Ronald later threw away Sires's clothing in a fast-food dumpster. Ronald believed that Richardson "was probably not around anymore." After Ronald returned from disposing of Sires's clothing, Idee began to speak about the crime; Sires instructed her to "shut the fuck up."

In the afternoon of January 24, 2009, a friend found Richardson's body in the bathroom. Near the body was a syringe and, close by, a mirror with a razor blade and a lighter. The bathroom door contained several holes and a baseball bat was near the front door.

Assistant Medical Examiner Janice Frank performed an autopsy on Richardson's body. Frank found several tiny pinpoint hemorrhages in the membranes of Richardson's eyelids. The hemorrhages could occur with strangulation, smothering, or other causes. Richardson also had an abrasion, scratches on her face, and blood in her mouth. At the time of autopsy, Richardson weighed 96 pounds and had needle puncture marks on her arms consistent with intravenous drug use.

Laboratory toxicology tests established that Richardson had potentially lethal morphine and methamphetamine levels in her body, as well as a small amount of cocaine and benzodiazepine. Frank concluded that Richardson, a known drug user, accidentally died from acute heroin, methamphetamine, and cocaine intoxication, with several contributing health conditions.

A family member responding to Richardson's unexpected death found open lockboxes underneath her bed – an odd circumstance according to the family member.

Approximately one week later, a Simi Valley police officer responded to a dispatch call reporting that people were inside Richardson's home using flashlights. When the officer arrived, Sires and Idee were leaving the home; the front door had been forced open. Idee explained to the officer that she returned to retrieve her personal property. The officer responded that

4

Richardson had died. Idee appeared surprised, but Sires did not react. Neither person asked how Richardson died.

*Admissions to Lopez*

A week or two following Richardson's death, Idee invited Lopez to her hotel room to use drugs. He noticed that she had a credit card in Richardson's name and an identification card with her photograph but Richardson's name. Lopez asked Idee if she and Sires had killed Richardson. Idee responded that Sires had suffocated Richardson with a plastic bag. Idee described details of the crime, including how she hid in the bathroom and Richardson struck the bathroom door with a baseball bat; that Richardson stated that she knew Sires and Idee were there to rob her; and that Idee and Sires planned to give Richardson an overdose of heroin. Idee admitted that she and Sires attempted to murder Richardson by smothering her with a pillow, but Richardson fought back. Sires then asked Idee to hand him a plastic bag. Sires suffocated Richardson with the bag. Idee described the murder as, "the bitch wanted to live" because she fought for 45 minutes.

Following Richardson's death, Sires and Idee moved her body to the bathroom and staged an accidental drug overdose scene. Sires thereafter looked for items to steal from the home, including from the two lockboxes under the bed.

On March 17, 2009, Lopez informed a Simi Valley police officer that Sires and Idee had murdered Richardson. An investigating police officer then informed the medical examiner, who concluded that it was possible that Richardson died by smothering. The examiner then issued an amended autopsy report concluding that Richardson's manner of death could not be determined.

5

In May 2009, during recorded telephone calls, Idee stated to Lopez that she would share only half the blame for Richardson's death. That same month, a Simi Valley narcotics detective interviewed Sires, who stated that Richardson fronted money for methamphetamine purchases. Sires denied seeing Richardson on the night of her death but admitted acts of identity theft against her.

After Idee was arrested for identity theft, Lopez visited her in jail. In a videotaped conversation, Idee stated that Sires placed the plastic bag on Richardson's head and suffocated her. She also stated that she and Sires agreed that they would not speak about the crime to police.

*Other Evidence*

Ronald also visited Idee in jail and held a videotaped conversation with her. Idee stated that Sires threatened her and her family with physical harm if she implicated him in the murder.

On July 5, 2009, a police detective conducted a proffer interview with Idee in the presence of her attorney and the prosecutor. Idee stated that Sires demanded that she hold Richardson down so that he could suffocate her. She initially refused, then began to smother Richardson, but stopped. After threats from Sires, Idee held Richardson's legs while Sires smothered her with a plastic trash bag. Sires threatened Idee if she revealed the murder to police. The prosecutor did not agree to a leniency agreement with Idee.

On September 8, 2009, Lopez had a recorded conversation with Sires who stated that Idee was the person who murdered Richardson after he pushed her to the floor.

During a police interview, Sires presented an alibi for the evening of Richardson's murder. He later recanted the alibi and stated that Richardson had been threatened by an abusive and dangerous man. In yet another police interview, Sires admitted that he was present the night of Richardson's murder, but was confining Richardson's dog in the kitchen while Idee smothered Richardson first with a pillow, then a plastic bag.

Sires testified at trial and stated that Richardson fronted drug money for him which he used to buy methamphetamine. He also admitted committing credit card theft against her. Sires stated that there was no plan to murder or rob Richardson that evening and that Idee alone murdered Richardson. He explained that Richardson fell to the floor when he tried to separate the two women. Sires stated that he restrained Richardson's Rottweiler dog because it bit Idee as she attacked Richardson. He admitted moving Richardson's body to the bathroom and, thereafter, retrieving money and drugs from the home. Sires added that Idee carried a plastic bag as she left the home. In sum, Sires described his presence as a bystander who confined the dog in the kitchen.

*Conviction, Sentencing, and Resentencing Petition*

The jury acquitted Sires of first degree special circumstance murder, could not agree upon a residential burglary count, and convicted him of second degree murder. (§§ 190.2, subd. (a)(17)(G) [murder committed during burglary], 187, subd. (a), 189, subd. (b), 459.)

The trial court sentenced Sires to a prison term of 15 years to life. The court also imposed various fines and fees and awarded Sires 757 days of presentence custody credit. The court

7

then dismissed the burglary count and struck a prior prison term allegation.

On September 26, 2022, Sires filed a section 1172.6 petition for resentencing, having checked each box on the form petition. The trial court found that Sires made a prima facie showing for relief, issued an order to show cause, and subsequently held an evidentiary hearing in accordance with section 1172.6, subdivision (d).

Following the hearing, the trial court found that the prosecution met its burden to prove beyond a reasonable doubt that Sires is guilty of second degree murder as either the actual killer or a direct aider and abettor. The court then denied Sires's resentencing petition.

Sires appeals and contends that 1) the trial court's finding that he acted with express malice is contrary to his acquittal of first degree premeditated murder; 2) the trial court erred by not excluding prejudicial evidence of Idee's hearsay statements; 3) insufficient evidence exists that he aided and abetted an implied malice murder.

*DISCUSSION*

Section 1172.6 was enacted to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Schell* (2022) 84 Cal.App.5th 437, 442.) Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), a person is liable for murder only if the person was the actual killer, the person acted with intent to kill in

8

aiding, assisting, or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); *Schell*, at p. 442.) Section 1172.6 establishes a procedure for defendants convicted of murder and attempted murder to seek resentencing if they assert that they could not be convicted of those crimes given the amendments to sections 188 and 189.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270 [substantial evidence review following section 1172.6 evidentiary hearing]; *People v. Schell, supra,* 84 Cal.App.5th 437, 442 [same].) We do not redetermine the weight of the evidence or the credibility of witnesses. (*Ibid.*) " ' "Conflicts and even testimony . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " (*Montanez*, at p. 270.)

*I.*

Sires contends that his acquittal of first degree murder precludes the trial court from finding that he committed second degree murder with express malice. For several reasons, we reject this argument.

First, Sires has forfeited this argument by not raising it at any time during the resentencing proceedings. His arguments

below mainly concerned evidence that he was neither the actual perpetrator nor an aider and abettor of Richardson's murder. A claim not raised in a section 1172.6 proceeding may be forfeited on appeal. (*People v. Schell*, *supra*, 84 Cal.App.5th 437, 444.) Here the parties engaged in extensive briefing and supplemental briefing as well as oral arguments, but Sires did not present this specific argument in the trial court.

Secondly, the argument fails on its merits.

At trial, the jury received instructions regarding the elements of murder and the definition of malice aforethought, among other instructions regarding felony murder and residential burglary. (CALCRIM Nos. 520, 521, 540B, 548, 640, 1700.) Thus, CALCRIM No. 521 defined the elements of willful, deliberate, and premeditated first degree murder. The prosecutor argued that Sires was guilty of felony murder or second degree murder either as a direct perpetrator or an aider and abettor with either express or implied malice.

Pursuant to the instructions, the jury could have found that Sires acted with express malice but not premeditation and deliberation. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080 ["A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill"].) Although express malice is one element of first degree premeditated murder, proof of additional elements of premeditation and deliberation is also required. The jury was also instructed that murder with malice or the intent to kill, but lacking proof beyond a reasonable doubt of premeditation and deliberation, constitutes second degree murder. (CALCRIM No. 520.)

Sufficient evidence supports the resentencing court's finding beyond a reasonable doubt that Sires was the direct

perpetrator of Richardson's murder who acted with express or implied malice. Sires pushed Richardson onto the floor, retrieved a plastic bag, and held it over her head until she died. Idee so informed both Ronald and Lopez in recorded conversations. Ronald saw Sires leaving Richardson's home carrying a plastic bag that was later deposited in a hotel dumpster. Ronald also disposed of Sires's clothing at his request. When informed by a police officer that Richardson was dead, Sires had no questions or response. The resentencing court expressly found the evidence credible that Sires was the direct perpetrator. To the extent Sires urges contrary or conflicting inferences, we must reject them. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 591.)

## II.

Sires argues that the trial court erred by admitting into evidence, over his objection, Idee's hearsay statements implicating him in Richardson's murder.[3] Sires's written in-court stipulation to the receipt of Idee's hearsay statements forecloses his argument.

Prior to trial, the prosecutor indicated his intent to introduce Idee's out-of-court statements, including those made to Ronald and Lopez. Idee's statements were made during recorded telephone calls, recorded jail visits, or to law enforcement. The prosecutor stated that he sought admission of the statements pursuant to various exceptions to the hearsay rule, including statements of a co-conspirator, contemporaneous statements, and statements of existing state of mind. (Evid. Code, §§ 1223, 1241, 1250.)

In response, defense counsel stipulated to the admission of Idee's hearsay statements because the statements in part

---

[3] Sires abandons this argument in his reply brief.

11

supported the defense.  Counsel stated:  "So as far as the defense is concerned, we have a desire that her statements come in.  And for those purposes we are not filing objections to the People's motions to admit those statements under the exceptions to hearsay for co-conspirator or the like."  The trial court asked counsel if he intended to object to any of the statements and counsel replied "No."  The prosecutor and defense counsel then signed a written stipulation covering Idee's statements as well as the foundation for her statements, including audio and video files, transcripts, and documentary evidence.

Absent a dispositive intervening change in the law, Sires is not entitled to relitigate a prior evidentiary issue.  A section 1172.6 proceeding does not permit a defendant to litigate anew any trial issue or allow a challenge to factfinding from the original trial that defendant would like to revisit.  (*People v. Rodriguez*, *supra*, 103 Cal.App.5th 451, 457.)  "Just as a defendant may not raise a new evidentiary objection on appeal, a petitioner who failed to make a specific evidentiary objection at trial may not raise the issue for the first time at a resentencing hearing.  This is consistent with the limited nature of section 1172.6 proceedings and reflects a reasonable legislative determination that resentencing hearings are not the proper forum to litigate issues that could have been raised at trial."  (*People v. Palacios* (2024) 101 Cal.App.5th 942, 954.)  This rule is essentially an extension of the general forfeiture rule to resentencing hearings.  (*Ibid.*)

### III.

Sires asserts that there is insufficient evidence that he aided and abetted Richardson's murder.  In view of our

discussion, *infra*, we need not discuss this alternative finding by the trial court.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

Kristi J. Peariso, Judge

Superior Court County of Ventura

———————————————

Claudia Y. Bautista, Public Defender, and William M. Quest, Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.